IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| LAQUINCE HOGAN | § | |
| Plaintiff | § | |
| v. | § | Case No. 5:21-CV-00144-RWS-JBB |
| CHANDRA ANDERSON, ET AL. | § | |
| Defendants | § | |

# ORDER

Plaintiff LaQuince Hogan, a former inmate of the Bowie County Correctional Center proceeding *pro se*, filed the above-styled and numbered civil action complaining of alleged violations of his constitutional rights. Docket No. 8. The case was referred to the United States Magistrate Judge in accordance with 28 U.S.C. § 636.

Plaintiff's second amended complaint, the operative pleading in the lawsuit, names as Defendants Health Services Administrator Karen Ashley, Nurse Pulse, Nurse Chandra Anderson, Officer Marie Johnson, Officer Brown, Detective Dustin Thompson, Captain Stuart Boozer, Lt. Sillivan, Warden Page, the Bowie County Sheriff's Department, the City of Texarkana Police Department, the Chief Nursing Officer, Quality Officer, and Risk Manager at Wadley Regional Medical Center, Nurse Jan Burke of Wadley Regional Medical Center, Director of Operations for LaSalle Corrections [which operated the Bowie County Correctional Center at the time] Jay Eason, and four officials of the Arkansas Department of Corrections: Deputy Directors William Straughn and Dale Reed of the Arkansas Department of Corrections, Prison Rape Elimination Act ("PREA") coordinator Amanda Pasley, and a medical provider named Sharonda Long. Docket No. 14-1.

### I.     Plaintiff's Claims

Plaintiff raises multiple claims in connection with events beginning on November 25, 2019. He states that on that date, around 11:15 a.m., he suffered severe pain in his spine, neck, and legs, and then lost feeling in his legs, falling to the floor. *Id.* at 8. After Nurses Pulse and Gilchrest arrived,

Nurse Pulse called Health Services Administrator Ashley on her cell phone and informed Plaintiff that Administrator Ashley had instructed her to move Plaintiff into a wheelchair. Nurse Gilchrest, however, said that she was not touching Plaintiff and stepped back. Nurse Pulse then asked Lt. Manning to put Plaintiff in the wheelchair. Lt. Manning and an inmate named Dawson complied but aggravated his injuries by picking Plaintiff up by the arms and legs. Once in the wheelchair, the nurses took Plaintiff to the infirmary. *Id.*

Plaintiff then alleges that he was taken to a holding cell at about noon. *Id.* at 8–9. Lt. Sillivan came and talked to him, and Nurse Dean came in with a syringe and asked if Plaintiff could feel his legs. *Id.* at 9. When Plaintiff told her no, Nurse Dean poked him with the needle in both feet but insisted that she had not injected him with anything. *Id.*

About three hours later, Plaintiff could no longer hold his bladder and urinated on himself. *Id.* He informed Captain Boozer of the situation, but Captain Boozer walked away without doing anything. Plaintiff then told Lt. Manning, who had Plaintiff taken to Bravo Barracks, where inmate Dawson and another inmate helped him shower and change into clean clothes. Plaintiff was then taken back to the holding cell. *Id.*

Later that day, Plaintiff told Lt. Sillivan that he was going to go on a hunger strike because he had burning pain in his feet, and because his injuries were not being taken seriously. Lt. Sillivan responded that he would inquire on having Plaintiff taken to the hospital. *Id.* At about 7:50 p.m., Officers Johnson and Brown came to take him to the hospital while Sgt. Martin filmed this event with a handheld camera. He was taken to Wadley Regional Medical Center, where a CT scan and MRI revealed bulging discs in his neck and spine. *Id.* at 10.

Plaintiff pleads that, at some point, Nurse Chandra Anderson came into his room and told him to lie on his side and pull down his pants for two injections. *Id.* Plaintiff complied even though it was painful. After the two injections, Plaintiff alleges that Nurse Anderson rammed something into his anus. He asked "ma'am, did you just rape me?" Nurse Anderson replied that she had been a registered nurse for 13 years and then ran out of the room. *Id.*

Plaintiff alleges that he told Officer Johnson that Nurse Anderson had violated him, but

Officer Johnson did not respond. *Id.* He again told Officer Johnson and Brown when they were back in the transport van. According to Plaintiff, Officer Johnson and Brown had protocol and procedures which they were supposed to follow under the PREA, but they did not. *Id.*

Plaintiff alleges that he was put back into the same holding cell upon his return to the jail on November 26, 2019. *Id.* Later that same day, Plaintiff was returned to his barracks. On December 4, he wrote to the Sheriff's Department saying that he wanted to talk to someone about a sexual assault. He was interviewed on December 10 by a detective, after which Lt. Sillivan and Captain Boozer took him back to his barracks, packed his property, and placed him in an isolation cell with no handrails. *Id.* at 10–11. Captain Boozer later returned and took Plaintiff's wheelchair. *Id.* at 11.

The next day, Plaintiff fell while trying to get to the toilet, urinating on himself. *Id.* An officer called the medical department, and medical personnel came and picked him up by his arms despite his severe pain. Plaintiff was taken to the infirmary where his vital signs were read, and he was returned to the cell without a change of clothes. *Id.*

Plaintiff pleads that, on December 13, 2019, he sent a request to Warden Page complaining of the actions of the medical staff and security. *Id.* He alleges that the warden wrote back and told him that he had been released to the general population but did not address any of the civil rights violations about which Plaintiff complained. *Id.*

The next day, Plaintiff again wrote to the warden complaining that the officers were trying to break him by using a technique called "poor punishment," and that he could not use the phone, go to the toilet, shower, or eat. *Id.* at 11–12. Captain Boozer responded to this letter by saying that they could not put him in a barracks if he could not walk because they had to be able to assist him to and from medical. *Id.* at 12. Plaintiff then filed a grievance on December 19, but it was rejected as untimely despite being filed ten days after he was put in isolation and his wheelchair taken. *Id.*

Plaintiff complains that he had to wear his soiled clothes from December 11 until December 15, when Lt. Manning came to his cell and helped him into a wheelchair. *Id.* Lt. Manning took Plaintiff to Bravo Barracks, where other inmates helped him shower and put on clean clothes. Lt. Manning then took Plaintiff back to his cell. *Id.*

On December 17, 2019, officers came to his cell and told him to pack because he was moving back to general population. *Id.* According to Plaintiff, he informed the officers that he was suffering from sharp pains in his spine, legs, and feet when he stood up, and so he would need assistance to move from the isolation cell to the barracks. Plaintiff's request for a wheelchair, however, was denied. Additionally, Plaintiff alleges that even though he did not refuse to leave restrictive housing, he was disciplined for the alleged refusal. *Id.*

Plaintiff also states that he wrote to the Texas Department of Criminal Justice, but they told him that they had no jurisdiction over county jails. *Id.* at 12–13. He also wrote to Administrator Ashley to ask for a walking cane, but she replied that there was nothing more they could do. *Id.* at 13.

On December 27, 2019, Plaintiff was moved back to Bravo Barracks, where he arrived by supporting himself on the back of a laundry cart holding his property. *Id.* An inmate in the barracks loaned him a walking cane. Three days later, he was taken by wheelchair to a transport van and transferred to the Arkansas Department of Corrections. *Id.* Plaintiff also complains of the medical care he received at the Ouachita River Correctional Unit in Arkansas. *Id.* at 14–16.

In March of 2020, Plaintiff wrote to the U.S. Department of Justice about the sexual assault and was told to file a police report with the Texarkana police department. *Id.* at 16. He contacted the Texarkana police department in June, and they said that there was insufficient evidence to support the listed charge and that Plaintiff had been in the custody of the Bowie County Sheriff's Department, so the incident would be in the jurisdiction of the sheriff's department to investigate further. He filed grievances in Arkansas without success and contacted the Texas Board of Nurse Examiners, Lt. Manning, and the Bowie County District Attorney, but received no responses. *Id.* at 17.

## II. The Magistrate Judge's Report and Plaintiff's Objections

After reviewing Plaintiff's amended complaint and the extensive exhibits he furnished, the Magistrate Judge issued a Report on January 26, 2024, recommending that all of Plaintiff's claims except for his claim against Nurse Anderson be dismissed. *See* Docket No. 17. The Magistrate Judge

listed the six claims identified by Plaintiff in his amended complaint and discussed each of these in turn. Plaintiff filed objections to the Report on February 12, 2024. Docket No. 20.

    A.    <u>Plaintiff's Cruel and Unusual Punishment Claim Fails Because Plaintiff Did Not Plausibly Plead Deliberate Indifference</u>

The first of Plaintiff's claims, against Administrator Ashley and Nurse Pulse, concerned his being picked up and put into a wheelchair on November 25, 2019. The Magistrate Judge applied the Fifth Circuit ruling on what constitutes deliberate indifference and determined that Plaintiff's simple disagreement with the nurses' assessment and their decision to have Lt. Manning and inmate Dawson pick him up and put him in a wheelchair did not amount to deliberate indifference to serious medical needs. *See Evans v. Cerliano*, 6:07cv504, 2008 WL 906304, at *7 (E.D. Tex., March 31, 2008) (dismissing Plaintiff's deliberate indifference claim because "the fact that [Defendant] asked two inmates, as well as an office[r], to try to help [Plaintiff] up off the floor does not show deliberate indifference; although [Plaintiff] asserts that it was improper for [Defendant] to use inmates to try to lift him up, this contention shows nothing more than negligence, and not deliberate indifference"); *Allen v. Herrera*, civil action no. 4:06cv2531, 2006 U.S. Dist. LEXIS 75292, 2006 WL 2987683 (S.D. Tex., October 17, 2006).

In his objections, Plaintiff argues that Administrator Ashley had possession of his medical records and therefore had more knowledge than an ordinary lay person with regard to neck, back, or spinal injuries. Docket No. 20 at 1–4. Likewise, he says that Nurse Pulse knew that Plaintiff suffered from new symptoms in his back and legs as well as pre-existing medical conditions, which makes him more susceptible to injury. Plaintiff contends that Administrator Ashley and Nurse Pulse chose to ignore the seriousness of his medical needs and respond in a deliberately indifferent manner. He attaches medical records from 2007 showing that he had discussed the option of back surgery with a doctor in Oklahoma. *Id.*

Even assuming that the Bowie County medical staff had access to 12-year-old medical records from Oklahoma, Plaintiff has failed to controvert the Magistrate Judge's conclusion that Plaintiff was simply disagreeing with the nurses' decision to have him picked up off the floor and

placed into a wheelchair. Docket No. 17 at 14–16. Plaintiff's conclusory assertions that Administrator Ashley and Nurse Pulse were acting intentionally with deliberate indifference are not sufficient to state a claim upon which relief may be granted. *See Young v. McCain*, 760 F.App'x 251, 257 (5th Cir. 2019) (conclusory allegations of ill will and injurious intent did not state a claim of deliberate indifference). Plaintiff's objection on this point is without merit. Accordingly, Plaintiff's objection is **OVERRULED**.

      B.      <u>Plaintiff Retaliation Claim Fails Because Plaintiff Did Not Plausibly Plead Causation</u>

After agreeing with the Magistrate Judge's recommendation that he be allowed to proceed on his claim against Nurse Anderson, Plaintiff states that the facts concerning his retaliation claim have been "misinterpreted." Docket No. 20 at 4–7. He alleges that on the day Detective Dustin Thompson came to interview him, Plaintiff requested assistance to go to the Alpha floor interview room to meet with the detective. *Id.* at 4. After Captain Boozer and Lt. Sillivan were aware of the request, they came to the Bravo dorm deck with a wheelchair, helped him into the wheelchair, and took him to the elevator to go to the Alpha deck interview room. While in the elevator, Plaintiff told Lt. Sillivan that he had been calling for him. Plaintiff alleges that Captain Boozer appeared to be upset after Plaintiff made this statement. *Id.* at 4–5.

Plaintiff pleads that the officers took him to the interview room where he spoke to Detective Thompson of the Texarkana City Police Department. *Id.* at 5. Once the interview was over, Captain Boozer returned to help Lt. Sillivan take Plaintiff to Bravo Deck and pack his property. Plaintiff asked where he was going, and Captain Boozer said that he was going to Alpha segregation. Plaintiff asked why and Captain Boozer told him "because you said you can't walk." On December 16, 2019, Captain Boozer came to his cell and told him "don't bite the hand that feeds you." Plaintiff alleges that Captain Boozer is a very large man, and that Captain Boozer and Lt. Sillivan were known to beat inmates where no cameras could see. *Id.*

Plaintiff also pleads that on Sundays, he could use a wheelchair to go to Bravo Deck for a shower and to go to visitation, but when he returned from visitation, the wheelchair would be taken

away. *Id. at 6.* Plaintiff alleges that he was denied routine showering, access to sunlight, and access to the law library, and that he had to stop eating to avoid defecating on himself, causing him to lose weight. Plaintiff further states that Warden Page was informed by the sheriff's department that they were investigating Plaintiff's PREA complaint before his interview with Detective Thompson. *Id.* He asks that he be allowed to proceed with his retaliation claim.

The Magistrate Judge correctly determined that Plaintiff's allegations are insufficient to set out a retaliation claim. A retaliation claim requires (1) the invocation of a specific constitutional right, (2) a showing of intent to retaliate for the exercise of that right, (3) retaliatory adverse act, and (4) a showing of causation, meaning that but for the alleged retaliatory act, the action complained of would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1999). Although the inmate does not normally need to plead detailed factual allegations, the inmate must plead facts sufficient to give rise to a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff." *Pfang v. Lamar Inst. of Tech.*, 685 F. Supp. 3d 425 (E.D. Tex. 2023) (citations omitted). Conclusory allegations, however, are not sufficient. Instead, the inmate must allege direct evidence of retaliation or a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he was the victim of retaliation. *Johnson*, 110 F.3d at 310.

In the present case, Plaintiff's allegations are insufficient to set out a retaliation claim. Plaintiff presents little more than his personal belief that he was the victim of retaliation. He offers nothing to suggest that but for the alleged retaliatory motive, the acts of which he complains would not have occurred. Plaintiff acknowledges that he was told he was placed in segregation because Plaintiff said he could not walk, and he attaches documents to his objections showing that the medical department at the jail believed he did not need a wheelchair because he had been cleared by the emergency room. Docket No. 20-1 at 2, 5.

The fact that Plaintiff was placed in a segregation cell immediately after his interview with the detective does not itself show that his placement was retaliation for the interview, given that Plaintiff had told the officers he could not walk and required a wheelchair immediately prior to the interview. Nor has he offered anything to suggest that the taking of his wheelchair was the result of retaliation rather than the medical department's belief that he did not need one. Plaintiff's objection on this point is without merit. Accordingly, Plaintiff's objection is **OVERRULED**.

      C.      <u>Plaintiff Cannot Sue Individuals Under the PREA</u>

In his fourth objection, Plaintiff asserts that, according to the Federal Bureau of Prisons, the Prison Rape Elimination Act, 28 C.F.R. Part 115, was put into place to protect people such as himself. Docket No. 20 at 8–9. He complains that LaSalle Corrections has yet to notify him of the result of its investigation, and that while LaSalle ended its contract with Bowie County Corrections in 2021, this does not absolve the defendants of responsibility. Plaintiff argues that the PREA is an official policy adopted by the federal government, but Jay Eason and other officials of LaSalle Corrections have regularly failed to follow state or federal laws or regulations.

The Magistrate Judge correctly concluded that the Prison Rape Elimination Act does not establish a private cause of action for individual plaintiffs. *Krieg v. Steele*, 599 F.App'x 231, 232–33 (5th Cir. 2015). Because he lacks a private cause of action, Plaintiff cannot sue any of the named Defendants for alleged violations of the PREA.

The fact that LaSalle Corrections did not notify him of the results of their investigation likewise does not set out a federal constitutional claim. Prisoners do not have a constitutional right to have grievances investigated or resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *Mahogany v. Miller*, 252 F.App'x 593, 595 (5th Cir. 2007). To the extent Plaintiff may be referring to a criminal investigation of Nurse Anderson, he has no constitutional right to have another person criminally prosecuted. *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990). This objection is without merit. Accordingly, Plaintiff's objection is **OVERRULED**.

D. <u>Plaintiff's Claims Against the Arkansas Defendants Are Transferred to the Western District of Arkansas</u>

Finally, the Magistrate Judge recommended dismissing the claims against the Defendants located in the State of Arkansas—medical provider Sharonda Long, Arkansas Department of Corrections Deputy Directors William Straughn and Dale Reed, and PREA Coordinator Amanda Pasley—for want of personal jurisdiction. Plaintiff objected, stating that he believed the Court had jurisdiction over these defendants under supplemental and diversity jurisdiction. Docket No. 20 at 9–10.

Plaintiff mistakes subject matter jurisdiction for personal jurisdiction. Personal jurisdiction refers to a court's jurisdiction over the parties involved in the lawsuit, whereas subject matter jurisdiction refers to a court's jurisdiction over a specific subject matter. Supplemental and diversity jurisdiction relate to subject matter jurisdiction and as such are not applicable here. *See* 28 U.S.C. §§ 1332, 1367. Furthermore, diversity jurisdiction requires complete diversity, meaning that the plaintiff and all of the defendants in the lawsuit must be citizens of different states. *See Flagg v. Stryker Corp.*, 819 F.3d 132, 135 (5th Cir. 2016). Some of the Defendants in this case are from Texas and some are from Arkansas, so for complete diversity to exist, Plaintiff would have to be a citizen of neither of those States—which he has not shown.

Alternatively, rather than having his claims against the Arkansas defendants be dismissed, Plaintiff asks that they be transferred to the U.S. District Court for the Western District of Arkansas. Docket No. 20 at 9–10. The Court has reviewed this request and has determined that it is meritorious. The statute of limitations for civil rights claims in the State of Arkansas is three years, meaning that some or all of Plaintiff's claims against the Arkansas defendants could be barred by limitations if he were to re-file them at this point in time. In the interest of justice, the Court will **GRANT** this request and transfer Plaintiff's claims concerning the Arkansas defendants to the Western District of Arkansas, Hot Springs Division.[1] 28 U.S.C. § 83(b)(6).

---

[1] Plaintiff requested that his claims against the Arkansas defendants be transferred to the Western District of Arkansas, Texarkana Division. The facility of that division, however, is located in Hot Spring County, within the Hot Springs Division. Therefore, the Court will transfer the relevant claims to the Hot Springs Division instead.

### III. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. § 636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections—other than his request for a transfer of his claims against the Arkansas defendants—are without merit. It is accordingly

**ORDERED** that the Report of the Magistrate Judge (Docket No. 17) is **ADOPTED** in all respects other than the portion concerning the defendants in the State of Arkansas. It is further

**ORDERED** that the Plaintiff's claims concerning the Defendants located in the State of Arkansas—medical provider Sharonda Long, Arkansas Department of Corrections Deputy Directors William Straughn and Dale Reed, and PREA Coordinator Amanda Pasley—are **SEVERED** from this lawsuit and **TRANSFERRED** forthwith to the U.S. District Court for the Western District of Arkansas, Hot Springs Division, for such other and further proceedings as that Court may deem appropriate. The Clerk shall transmit Docket Nos. 14, 17, and 20 to the Western District of Arkansas along with a copy of this order. It is further

**ORDERED** that all remaining claims and defendants in this lawsuit, *except for* Plaintiff's claim of an alleged sexual assault by Nurse Chandra Anderson on or about November 25 or November 26, 2019, are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted. Nurse Anderson shall be the sole remaining defendant in the lawsuit.

**So ORDERED and SIGNED this 7th day of August, 2024.**

*/s/ Robert W. Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE